Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 683 | **DATE** | 9/27/2000 |
| **CASE TITLE** | MICHAEL TATOM vs. AMERITECH CORPORATION, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court (1) grants in part and denies in part defendants' and plaintiffs' motions to strike [57-1,76-1,79-1]; (2) denies Tatom's motion for partial summary judgment [44-1]; and (3) grants defendants' motion for summary judgment [46-1]. This case is hereby terminated. All pending motions are dismissed as moot. This is a final and appealable order. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | SEP 2 8 2000 date docketed | | 84 |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| CG | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 SEP 27 PM 3:28 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

*DOCKETED*
*SEP 2 8 2000*

| | | |
|---|---|---|
| MICHAEL TATOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzman |
| | ) | |
| AMERITECH CORPORATION | ) | 99 C 683 |
| and AMERITECH INFORMATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Tatom has sued Ameritech Corp. and Ameritech Information Systems, Inc.
(collectively "Ameritech") alleging breach of contract, violations of the Illinois Wage Payment and
Collection Act, 820 ILL. COMP. STAT. 115/1 *et seq.*, and violations of the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(b), 1140. Pending before the Court are
the parties' cross-motions for summary judgment and the parties' motions to strike. For the reasons
provided in this Memorandum Opinion and Order, the Court (1) grants in part and denies the parties'
motions to strike; (2) denies plaintiff's motion for partial summary judgment; and (3) grants
defendants' motion for summary judgment. This case is hereby terminated.

84

# Facts[1]

Tatom, a resident of Colorado, was the Vice President of Operations for Ameritech's Custom Business Services unit ("CBS"). (Pl.'s LR 56.1(a)(3) ¶ 1, Defs.' LR 56.1(a)(3) ¶ 1.) As Vice President, Tatom was one of approximately 225-250 "Corporate Resource" level executives at Ameritech. (Defs.' LR 56.1(a)(3) ¶ 1.) Ameritech Corp. is a telecommunications provider organized under Delaware law, and its executive offices are in Chicago, Illinois. (Pl.'s LR 56.1(a)(3) ¶2.) Ameritech Information Systems, Inc. ("AIS") is a wholly-owned subsidiary of Ameritech Corp. (*Id.*) In January 1997, Tatom left Ameritech to become an officer at U.S. West, a full-service telecommunications provider. (Defs.' LR 56.1(a)(3) ¶¶ 6-7.)

Ameritech and U.S. West are both regional holding companies ("RHCs") that were created due to the court-ordered divestiture of AT&T in 1982 and the resulting court-approved Consent

---

[1]The following facts are either undisputed or deemed admitted because the party's statement or response did not refute the other party's statement of fact and/or was unsupported by a citation to the record as required by LR 56.1, which this Court strictly enforces. Although Tatom refers to Local General Rule 12, that rule has been re-titled LR 56.1, and the Court refers to LR 56.1 throughout the Memorandum Opinion and Order.

Plaintiff's Statement of Additional Facts, which essentially consists of plaintiff's affidavit, does not comply with LR 56.1(b)(3)(B) because it does not consist of "short numbered paragraphs, of any additional facts that require the denial of summary judgment, including specific references to the affidavits, parts of the record, and other supporting materials relied upon." It is therefore stricken. Accordingly, the Court deems moot any portion of defendants' submissions that seek to strike or seek to respond to Plaintiff's Statement of Additional Facts.

Plaintiff and defendants seek to have the Court strike various exhibits and LR 56.1(b)(3)(A) responses. The Court grants in part and denies in part Plaintiff's Motion to Strike Exhibits, Defendant's Opposition to Plaintiff's Response to Defendants' Statement of Material Facts, and Defendants' Motion to Strike Plaintiff's Affidavit and will discuss the particular exhibits or LR 56.1(b)(3)(A) responses as they become pertinent to the Court's discussion. Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Response is denied because the Court construes it as a motion to strike. To the extent that the Court does not rely on an exhibit or LR 56.1(b)(3)(A) response that the parties requested to strike, the Court denies the parties' motions to strike as moot.

Decree. (*Id.* ¶¶ 58-60.)[2] The Consent Decree prohibited the RHCs from providing long distance communications and a number of other products and services, except exchange telecommunications and exchange access services that were not services regulated by tariff. (*Id.* ¶ 61.) In April 1995, the court opened the long distance market to the RHCs, (*Id.* ¶ 64.) In February 1996, the Telecommunications Act of 1996 was passed. (*Id.* ¶ 73.) The Act removed the Consent Decree and eliminated barriers to companies wishing to compete against providers of local phone service. (*Id.*)

### Executive Benefits at Issue

In addition to receiving salary, paid vacations, health and other welfare benefits, and a pension, Ameritech offered Tatom certain executive benefits that are at issue in this case. (*Id.* ¶ 4.) These benefits included participation in Ameritech's Long Term Incentive Plan ("LTIP"), which provided, among other things, awards of stock options that vested over periods of time, participation in Ameritech's Key Management Life Insurance Plan ("KMLIP"), through which Ameritech paid certain premiums on a life insurance policy on Tatom's behalf, and eligibility for an incentive bonus under the CBS Compensation Program. (*Id.*) It is undisputed that Tatom was a participant in Ameritech's LTIP and KMLIP and that the CBS Compensation Program applied to him as a CBS employee. (*Id.* ¶¶ 32, 45, 53.)

The LTIP benefit arrangement is made up of several written documents. (*Id.* ¶ 33.) The terms of a participant's LTIP grant are governed by the LTIP plan document, the explanatory

---

[2]The Court denies Tatom's motion to strike the annual reports provided in Defs.' Tab 29 because they are public records that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" as required under FED. R. EVID. 201. *See e.g., Menominee Indian Tribe of Wisc. v. Thompson*, 922 F. Supp. 184, 195 (N.D. Ill. 1996), *aff'd*, 161 F.3d 449 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999).

brochure given to the participant by Ameritech to explain the award, and the stock option grant agreements. (*Id.*)

> The LTIP plan document states:
>
> Notwithstanding any other provision of the Plan, if a Participant, while otherwise eligible for payment or accrual of a benefit under the Plan: . . . has, without consent of the Company or any subsidiary, become associated with, is employed by, renders services to, or owns a substantial interest in any business that is competitive with the Company or its subsidiaries . . . then, his participation in the Plan shall immediately cease and all undistributed awards and grants previously made to him under the Plan and all rights to payments of any kind under the Plan shall be immediately forfeited.

(*Id.* ¶ 38.) The explanatory brochure states:

> Upon normal retirement (age 65) or approved early retirement (Rule of 75 eligible[3]) non-vested stock options . . . are cancelled. Vested stock options generally remain exercisable until the earlier of five years from your retirement date or the original expiration date of the options . . . Note: In the event you are employed by a company that is competitive with the Company's businesses, remaining vested options will be immediately cancelled.

(*Id.* ¶ 39.) Tatom's stock option grant agreements from 1994, 1995, and 1996 state the following or an equivalent to the following: "Such non-qualified stock option shall become exercisable as to all of such shares if the Participant's employment is terminated by reason of retirement at age 65 (or retirement prior to age 65 with the Company's approval) under a Company or subsidiary retirement plan . . . ." (Def.'s Tab 15, Stock Option Grant Agreements.)

The KMLIP is a collateral assignment split-dollar life insurance arrangement for eligible Corporate Resource executives that allows the participant and the company to purchase a life insurance policy on the participant's life and to share premium payments on the policy. (*Id.* ¶ 46.) The participant is the actual policy owner, but the company retains an interest in the cash value and

---

[3]It is undisputed that when he left Ameritech, Tatom met the Rule of 75, which refers to a formula by which an employee's age plus years of service must total 75 or more. (*Id.* ¶ 40.)

4

death benefit of the policy until a certain time. (*Id.* ¶ 47.) At that point in time, the company recoups its portion of the premium payments from the accrued cash value and surrenders all interest in the policy, and the participant then has all rights and responsibility for the policy. (*Id.*)

The KMLIP states that an "early roll-out" will occur when "a participant establishes a relationship with a competitor . . . , regardless of whether the participant is retirement eligible or has terminated employment with the Company." (*Id.* ¶ 48.) Upon early roll-out, the participant has the choice to continue to pay premiums on the policy in order to keep it in effect or to receive a distribution of the policy's remaining cash value (after the company has recouped its portion of the premium payments). (*Id.* ¶ 49.) The KMLIP document provides that the Ameritech Benefit Plan Committee "has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (Defs.' Tab 5, at 0020-21.) After Tatom left Ameritech, Ameritech offered him the choice to continue paying premiums on his policy, but he chose instead to receive a distribution of the policy's remaining cash value. (*Id.* ¶ 51.)

The CBS Compensation Program provides for incentive bonuses to CBS employees. (*Id.* ¶ 53.) The CBS Compensation Program document states: "The CBS Compensation Program is a statement of CBS' intentions and does not constitute a guarantee that any particular amount of compensation will be paid. It does not create a contractual relationship or any contractually enforceable rights between CBS and the employee." (*Id.* ¶ 55.) Further, the document states: "CBS reserves the right to decide all questions and issues arising under the CBS Compensation Program and its decisions are final." (*Id.*)

5

**Tatom Leaves Ameritech for U.S. West**

In January 1997, Tatom left Ameritech to become an officer of U.S. West. (*Id.* ¶ 6.) Walter Oliver ("Oliver"), Ameritech's Senior Vice President of Human Resources and chairman of the Ameritech Benefit Plan Committee, told Andrea Cohen ("Cohen"), Manager of Executive Compensation, to get legal advice and to talk with Ameritech's Corporate Strategy department about whether it considered U.S. West a competitor. (*Id.* ¶¶ 154, 157.) Oliver had decision-making authority with regard to Ameritech's executive benefits. (*Id.* ¶ 156.) Although neither Oliver nor Cohen recall who was consulted from that department, that department had tracked U.S. West as a competitive company. (*Id.* ¶¶ 159, 161.[4])

Steve Oi, manager of the Corporate Strategy department, was in charge of tracking competitive activity in the marketplace in which Ameritech competed and preparing summary analyses for senior management. (*Id.* ¶ 159.) According to Oi, in 1996, he had tracked U.S. West because of the "big news" that U.S. West invested in a subsidiary or division of Time Warner that housed telephone operations. (*Id.* ¶ 162; Defs.' Tab 27, Oi Dep. at 11; *see also* Pl.'s Mot. Strike, Att. 2, Oi Dep. at 13-14.) Time Warner's telephone operations primarily consisted of access provider service, a non-regulated service, to large businesses in terms of carrying certain kinds of calls. (Pl.'s

---

[4]The Court denies Tatom's motion to strike the Oi deposition transcript excerpts, Defs.' Tab 27, because the pertinent parts of Oi's testimony are based on personal knowledge and are relevant to the issue of whether U.S. West competed with Ameritech and whether Ameritech considered U.S. West a competitor. All other arguments in support of the motion to strike this exhibit lack merit. The Court further finds that Tatom has waived his objections to the testimony based on objections to defendants' responses to plaintiff's broadly phrased interrogatories and is not prejudiced by its admission because Oi was deposed by Tatom. For the same reasons, the Court denies Tatom's motion to strike the pertinent portions of the Weller deposition transcript excerpts provided in Defs.' Tab 26.

Mot. Strike, Att. 2, Oi Dep. at 14.) Time Warner had such telephone operations within the Ameritech region, particularly in Indianapolis, parts of Wisconsin, and Ohio. (*Id.*)

Further, according to Marian Mulchrone, Ameritech Corp.'s Regional Vice President for Voice and Data Managed Services, in January 1995, CBS bid for the non-regulated services business of Motorola in Arizona, an historic U.S. West state. (Defs.' LR 56.1(a)(3) ¶ 113.[5]) Ameritech lost the bid to U.S. West. (*Id.*)

Oliver made the decision to treat U.S. West as a competitor of Ameritech for purposes of Tatom's executive benefits. (*Id.* ¶ 158.) On January 21, 1997, Oliver sent a letter to Tatom, which stated:

> In light of your resignation and subsequent employment by U.S. West, a competitor of Ameritech, we wish to advise you of the following implications of your decision: . . .
>
> ***
>
> 2. No payment will be made with respect to the 1996 annual incentive award.
>
> 3. . . . . [Y]our early retirement is not approved by the Company for purposes of triggering accelerated vesting of stock options. Therefore, acceleration of unvested stock options shares will not occur and all stock options which have not vested as of January 31, 1997 will immediately be canceled.
>
> 4. Ameritech's Long Term Incentive Plans provide for the immediate cancellation of all outstanding awards, whether vested or unvested, if after separation of employment, you are employed by or render services to any company that competes with the business of Ameritech or any

---

[5]The Court denies Tatom's motion to strike Mulchrone's affidavit. Mulchrone's affidavit is based on personal knowledge of CBS' managed services group's bid for Motorola's business against U.S. West in Arizona. Thus, it is relevant to the issue of whether U.S. West was a competitor of Ameritech and whether Ameritech considered U.S. West a competitor. The Court notes that the existence of sources for competitive bid information, such as Mulchrone, should not be a surprise to Tatom because at the time the managed services group reported to the Vice President of Operations for CBS and Tatom was Vice President of Operations for CBS from 1994 to January 1997. (Defs.' LR 56.1(a)(3) ¶¶ 113-15; Tab 30, Mulchrone Aff. ¶ 10.)

of its subsidiaries. Therefore, all vested stock options will be canceled as of the close of business on January 31, 1997.

(Defs.' Ex. 3, Tab 3, 1/21/97 Letter; Defs.' LR 56.1(a)(3) ¶ 153.)

Tatom points to two Ameritech employees who were treated differently than him under the LTIP. (Pl.'s LR 56.1(a)(3) ¶ 10; Defs.' LR 56.1(a)(3) ¶ 175.) Neither of these employees were Corporate Resources level executives, marked by the fact that neither were eligible for participation in the KMLIP. (Defs.' LR 56.1(a)(3) ¶¶ 177-78.) Ameritech allowed both employees five years in which to exercise their vested stock options under the LTIP. (*Id.*) It is undisputed that neither Oliver nor Cohen were aware that either of these employees was going to work for U.S. West at the time each left Ameritech and only learned of this fact at a later date (*Id.* ¶ 181-82.)

Further, when another Corporate Resources executive retired in early 1997, Ameritech determined that he was going to work for one of Ameritech's competitors. (*Id.* ¶ 185.) Ameritech decided that his KMLIP policy would be rolled out because he was going to work for a competitor. (*Id.* ¶ 186.)

In 1997, Ameritech employed approximately 24,719 management employees and only 225 of those managers were Corporate Resource level executives. (*Id.* ¶ 188.)[6] Benefits change significantly when an individual reaches the Corporate Resource level. (*Id.* ¶ 189.) For example, only Corporate Resource level executives: (1) participate in the KMLIP; (2) receive special additional disability benefits, supplemental pension plan benefits; (3) participate in the deferral plan; (4) received higher stock option grant levels, which since 1994, included dividend equivalents. (*Id.*)

---

[6]The Court denies Tatom's motion to strike the fact statements in Defs.' LR 56.1(a)(3) ¶¶ 187-89 because such statements are relevant to the issue of Ameritech's treatment of its Corporate Resources executives in relation to its treatment of other employees.

8

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

## I. Breach of Contract

Tatom claims that Ameritech breached a contract when it denied him a 1996 bonus under the CBS Compensation Plan. He also claims that Ameritech breached a contract when it denied the acceleration of his unvested stock options and extended time in which to exercise them under the LTIP. (Defs.' LR 56.1(a)(3) ¶¶ 14, 34.)

With regard to Tatom's claim that there was a contract for his 1996 bonus under the CBS Compensation Plan, no reasonable jury could find in his favor. The Supreme Court of Illinois, in *Duldulao v. St. Mary of Nazareth Hospital Center*, stated that in order for "an employee handbook or other policy statement [to] create[] enforceable contractual rights . . . . the language of the policy

9

statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made." 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987).

The CBS Compensation Program document states: "The CBS Compensation Program is a statement of CBS' intentions and does not constitute a guarantee that any particular amount of compensation will be paid. It does not create a contractual relationship or any contractually enforceable rights between CBS and the employee." (Defs.' LR 56.1(a)(3) ¶ 55.) Based on this language, the CBS Compensation Plan does not contain a promise clear enough that an employee would reasonably believe that an offer had been made. *See Moore v. Illinois Bell Tel. Co.*, 155 Ill. App. 3d 781, 784-85, 508 N.E.2d 519, 520-21 (2d Dist. 1987) (finding no reasonable belief that an offer exists where policy states that it was not a contract or assurance of compensation). Further, Tatom's breach of contract claims under the CBS Compensation Program is not based on any conversations or oral communications. (*Id.* ¶ 57.) The Court therefore denies plaintiff's motion for partial summary judgment and grants defendants' motion for summary judgment as to Tatom's breach of contract claim based on the denial of his 1996 bonus.

Next, the Court addresses Tatom's claim that Ameritech breached a contract when it denied the acceleration of his unvested stock options and denied him extended time in which to exercise them under the LTIP. The terms of a participant's LTIP grant are governed by the LTIP plan document, the explanatory brochure given to the participant by Ameritech to explain the award, and the stock option grant agreements.[7] (*Id.* ¶ 33.)

The LTIP plan document states:

---

[7] Tatom's breach of contract claim under the LTIP is not based on any conversations or oral communications. (*Id.* ¶ 34.)

> Notwithstanding any other provision of the Plan, if a Participant, while otherwise eligible for payment or accrual of a benefit under the Plan: . . . has, without consent of the Company or any subsidiary, become associated with, is employed by, renders services to, or owns a substantial interest in any business that is competitive with the Company or its subsidiaries . . . then, his participation in the Plan shall immediately cease and all undistributed awards and grants previously made to him under the Plan and all rights to payments of any kind under the Plan shall be immediately forfeited.

(*Id.* ¶ 38.) The explanatory brochure states:

> Upon normal retirement (age 65) or approved early retirement (Rule of 75 eligible) non-vested stock options . . . are cancelled. Vested stock options generally remain exercisable until the earlier of five years from your retirement date or the original expiration date of the options . . . Note: In the event you are employed by a company that is competitive with the Company's businesses, remaining vested options will be immediately cancelled.

(*Id.* ¶ 39.) Tatom's stock option grant agreements from 1994, 1995, and 1996 state the following or an equivalent to the following: "Such non-qualified stock option shall become exercisable as to all of such shares if the Participant's employment is terminated by reason of retirement at age 65 (or retirement prior to age 65 with the Company's approval) under a Company or subsidiary retirement plan . . . ." (*Id.* ¶ 41; Def.'s Tab 15.)

First, Tatom argues that the forfeiture of his stock options under the LTIP is unenforceable because it is an unreasonable anti-competition clause. He provides no authority for the proposition that anti-competition forfeiture clauses in profit-sharing plans are unreasonable as a matter of law and the Court finds none. The cases he cites involve anti-competition clauses in employment contracts not profit-sharing plans and the Court therefore finds them distinguishable. *See Golden v. Kentile Floors, Inc.*, 512 F.2d 838, 844 (5th Cir. 1975) (distinguishing anti-competition clauses in employment contracts from those in pension plans because the latter do not prohibit competitive employment); *Rochester Corp. v. Rochester*, 450 F.2d 118, 122-23 (4th Cir. 1971) (same); *Nielsen*

11

*v. Nobart Color, Inc. Employees Profit-Sharing Plan & Trust*, No. 85 C 6286, 1986 WL 15087, at *5 (N.D. Ill. Dec. 30, 1986) (same).

Next, Tatom argues that Ameritech breached the LTIP agreement because it cannot prove that U.S. West was a competitor of Ameritech. The Court disagrees.

Tatom errs in focusing solely on whether U.S. West competed with Ameritech with regard to basic local telephone services and long distance services. The LTIP language clearly does not limit Ameritech to consider only such services because the language provides that forfeiture occurs when a participant "has, without consent of the Company or any subsidiary, become associated with, is employed by, renders services to, or owns a substantial interest in any business that is competitive with the Company or its subsidiaries." (Def.'s LR 56.1(a)(3) ¶¶ 38.) Further, the explanatory brochure does not limit Ameritech to consider only those services because it provides that forfeiture occurs when the participant is "employed by a company that is competitive with the Company's businesses." (*Id.* ¶ 39.) Lastly, the stock option grant agreements from 1994, 1995, and 1996 do not create such a limitation because they state the following or an equivalent to the following: "Such non-qualified stock option shall become exercisable as to all of such shares if the Participant's employment is terminated by reason of retirement at age 65 (or retirement prior to age 65 with the Company's approval) under a Company or subsidiary retirement plan . . . ." (*Id.* ¶ 41; Def.'s Tab 15.) In the January 21, 1997 letter to Tatom, Oliver stated that Ameritech did not approve Tatom's retirement prior to age 65 under the retirement plan because it determined that U.S. West was its competitor. (*Id.* ¶ 153.)

As discussed above, the Court finds Oi's deposition testimony and Mulchrone's affidavit relevant as to whether U.S. West actually competed with Ameritech and whether Ameritech

considered U.S. West a competitor. Steve Oi, manager of the Corporate Strategy department, was in charge of tracking competitive activity in the marketplace in which Ameritech competed and preparing summary analyses for senior management. (*Id.* ¶ 159.) In 1996, Oi had tracked U.S. West because of the "big news" that U.S. West invested in a subsidiary or division of Time Warner that housed telephone operations. (*Id.* ¶ 162; Defs.' Tab 27, Oi Dep. at 11; *see also* Pl.'s Mot. Strike, Att. 2, Oi Dep. at 13-14.) Time Warner's telephone operations primarily consisted of access provider service, a non-regulated service, to large businesses in terms of carrying certain kinds of calls. (Pl.'s Mot. Strike, Att. 2, Oi Dep. at 14.) Time Warner had such telephone operations within the Ameritech region, particularly in Indianapolis, parts of Wisconsin, and Ohio. (*Id.*) Further, according to Mulchrone, Ameritech Corp.'s Regional Vice President for Voice and Data Managed Services, in January 1995, CBS bid for the non-regulated services business of Motorola in Arizona, an historic U.S. West state. (Defs.' LR 56.1(a)(3) ¶ 103.) Ameritech lost the bid to U.S. West. (*Id.*) Thus, it is clear that U.S. West competed with Ameritech with regard to non-regulated services.

Tatom argues that because Ameritech allowed two other employees who went to U.S. West to exercise their vested stock options under the LTIP within five years of their departure, Ameritech did not consistently treat U.S. West as a competitor. However, it is undisputed that at the time of their departure Oliver was not aware that either employee was going to U.S. West.

Even if Oliver were to have known that the other employees were going to work for U.S. West, Tatom still would not prevail in his claim for breach of contract under the LTIP. The LTIP document unambiguously states that if a participant "*without consent of the Company or any subsidiary*, . . . [has] become associated with . . . [or] is employed by . . . any business that is competitive with the Company or its subsidiaries . . . then, his participation in the Plan shall

immediately cease and all undistributed awards and grants previously made to him under the Plan and all rights to payments of any kind under the Plan shall be immediately forfeited." (*Id.* ¶ 38.)[8] Thus, the plain language of the LTIP states that Ameritech and its subsidiaries may in some cases consent to an employee's leaving to work for a competitor.

The Court notes, however, that Ameritech does not have completely unbridled discretion in determining whether or not to consent to an employee's early retirement so that he or she may work for a competitor. Under Illinois law, every contract has an implied covenant of good faith and fair dealing. *Harris Trust & Sav. Bank v. Salomon Bros. Inc.*, 832 F. Supp. 1169, 1176 (N.D. Ill. 1993). The implied covenant of good faith and fair dealing requires that a contracting party vested with discretion exercise its discretion reasonably. *Id.*

Ameritech has provided evidence that it treats its Corporate Resource level employees differently than other employees. (Defs.' LR 56.1(a)(3) ¶¶ 187-89.) Corporate Resource employees are Ameritech's executive employees, who enjoy additional benefits due to their executive status. (*Id.* ¶ 187, 189.) The Court finds that Ameritech's exercise of discretion to treat Tatom differently than the other two employees is not unreasonable given his Corporate Resource level status, the increased level of responsibility that accompanies that status, and the heightened reliance of Ameritech on its top executives. Although the level of reliance may vary from executive to executive, logic dictates that a heightened reliance on top executives to manage all aspects of its business is accompanied by increased susceptibility should one of these executives leave to work for one of its competitors. That level of susceptibility does not exist with a corporation's lower-tiered

---

[8]In addition, the explanatory brochure and the stock option agreements also clearly state that Ameritech must approve early retirement under the LTIP. (*Id.* ¶ 39; Defs.' Tab 15.)

employees. Because the LTIP plan specifically stated that early retirement required Ameritech's approval and because Ameritech's exercise of discretion in denying approval of Tatom's early retirement was reasonable, the Court finds that Ameritech's cancellation of Tatom's stock options under the LTIP was not a breach of contract. The Court therefore grants Ameritech's motion for summary judgment and denies Tatom's summary judgment motion as to his breach of contract claims.[9]

## II. Illinois Wage Payment and Collection Act

Tatom claims that Ameritech violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/1 *et seq.* when it cancelled his stock options under the LTIP and did not provide his 1996 bonus under the CBS Compensation Program. The IWPCA provides that an employer must pay an employee his final compensation at the time of separation. 820 ILL. COMP. STAT. 115/1. Final compensation is defined to include "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILL. COMP. STAT. 115/2.

In support of his argument, Tatom relies on *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614, 582 N.E.2d 729 (5th Dist. 1991), for the proposition that he should have received a *pro rata*

---

[9]Curiously, neither party has addressed whether ERISA preempts Tatom's state law breach of contract claims. However, even if the parties were to have addressed the issue, the Court would still deny Tatom's motion for partial summary judgment and grant Ameritech's summary judgment motion as to those claims. The CBS Compensation Plan and the LTIP grant Ameritech discretion to determine eligibility for benefits (Defs.' LR 56.1(a)(3) ¶¶ 38, 39, 55; Defs.' Tab 15.), and for the reasons discussed in regard to Tatom's breach of contract claims, Ameritech has abided by the terms of the plan.

share of his 1996 bonus as well as stock option benefits under the LTIP. In *Camillo*, where (1) the benefits policy stated that "assistant managers are paid a bonus each year [and] must be on the payroll and actively working on January 31, or they will forfeit their bonus"; and (2) the employer made it impossible for plaintiff to fulfill the condition of working on January 31 by firing him on December 31, the court found that the employee had earned a *pro rata* share of his bonus. *Id.*, 221 Ill. App. 3d at 616-22, 582 N.E.2d at 731-34.

The Court finds *Camillo* distinguishable for two reasons. First, in the instant case, the CBS Compensation Plan does not unequivocally state that employees are paid a bonus each year. Instead, it states: "The CBS Compensation Program is a statement of CBS' intentions and does not constitute a guarantee that any particular amount of compensation will be paid." (Defs.' LR 56.1(a)(3) ¶ 55.) As discussed above, the LTIP provides for the cancellation of stock options if the participant joins one of Ameritech's competitors. (*Id.* ¶¶ 38, 39; Defs.' Tab 15.) Second, there is no claim that Ameritech set forth a strict time deadline for the vesting of rights to benefits and then made it impossible for Tatom to fulfill that condition by firing him. Tatom chose to leave Ameritech to work for U.S. West. Thus, *Camillo* is inapposite.

Further, the plain language of the IWPCA defines final compensation as compensation "owed by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILL. COMP. STAT. 115/2. Thus, "the act does not confer any rights to recovery of final compensation in the absence of a contractual right." *Byker v. Sequent Computer Sys., Inc.*, 96 C 2297, 1997 WL 639045, at * 7 (N.D. Ill. Oct. 1, 1997); *see Rakos v. Skytel Corp.*, 954 F. Supp. 1234, 1240 (N.D. Ill. 1996). Because the Court has already found that Tatom does not have a contractual right to any part of his 1996 bonus under the CBS Compensation Plan or to stock options under the

LTIP, the Court need not belabor the point here. For the above reasons, the Court therefore denies Tatom's motion for partial summary judgment and grants Ameritech's summary judgment motion as to Tatom's IWPCA claim.

## III. ERISA Claims

Tatom claims that Ameritech violated Sections 502(a)(1)(B) and 510 of ERISA, 29 U.S.C. §§ 1132(a)(1)(b), 1140, when it declined to continue to pay his life insurance policy premiums under the KMLIP while he worked for U.S. West. We address each ERISA provision in turn and begin with our discussion of Tatom's claim under Section 510 of ERISA.

Section 510 of ERISA provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan . . ." 42 U.S.C. § 1140. Section 510 "does not protect employees against all employer actions undertaken with an eye toward thwarting the attainment of benefits; only changes in one's employment status cannot stem from benefit-based motivations." *Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994).

It is undisputed that Tatom chose to leave Ameritech to work for U.S. West. (Defs.' LR 56.1(a)(3) ¶ 6.) The record is devoid of any evidence that Ameritech was responsible for changing Tatom's employment status. Thus, the Court denies Tatom's motion for summary judgment and grants Ameritech's summary judgment motion as to his claim of a Section 510 violation.

Next, Tatom claims that he satisfied the conditions of the KMLIP and that Ameritech failed to abide by the terms of that plan in violation of Section 502(a)(1)(B) of ERISA when it

implemented an early roll-out under the KMLIP. The KMLIP is a collateral assignment split-dollar life insurance arrangement in which the participant is the actual policy owner and the company retains an interest in the cash value and death benefit of the policy until a certain point in time. (*Id.* ¶¶ 46, 47.) Upon an early roll-out, the participant has the choice to continue to pay premiums on the policy in order to keep it in effect or to receive a distribution of the policy's remaining cash value. (*Id.* ¶ 49.)

Section 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "When someone raises a Section 502(a)(1)(B) claim, he or she is essentially asserting his or her contractual rights under an employee benefits plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992).

Further, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). "Where a plan confers power on the administrator to exercise discretion, the appropriate standard of review is the deferential 'arbitrary and capricious' one." *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1019 (7th Cir. 1998). "This means that the trustees' decision stands so long as it is based on a reasonable interpretation of the plan's language and the evidence in the case." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 67-68 (7th Cir. 1996).

The KMLIP document provides that the Ameritech Benefit Plan Committee "has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (Defs.' Tab 5, at 0020-21.) Further, it is undisputed that Oliver acted as the chairman of the Ameritech Benefit Plan Committee referred to in the KMLIP and that he had decision-making authority for the Human Resources group over Ameritech's executive benefits. (*Id.* ¶¶ 154, 156.) Thus, the KMLIP created wide discretion to determine eligibility for benefits under the plan. Thus, the Court reviews Ameritech's decision regarding Tatom's KMLIP benefits under the arbitrary and capricious standard.

Tatom must establish that Ameritech had no good reason to implement an early roll-out of his KMLIP. This he has failed to do.

The KMLIP document provides that an "early roll-out" will occur when "a participant establishes a relationship with a competitor . . . , regardless of whether the participant is retirement eligible or has terminated employment with the Company." (*Id.* ¶ 48.) Ameritech's reason for the denial of benefits to Tatom was his "subsequent employment by U.S. West, a competitor of Ameritech." (Defs.' Tab 3, 1/21/97 Letter.) As discussed above, at the very least, U.S. West competed with Ameritech with respect to non-regulated services. Ameritech had even lost a bid for Motorola's business to U.S. West in 1996. (Defs.' LR 56.1(a)(3) ¶ 113.) Thus, Ameritech's decision to treat U.S. West as a competitor was reasonable.

By stating that "[t]he facts and legal arguments supporting Plaintiff's breach of contract and wage claims also support a judgment in his favor on the issues of liability with regard to his ERISA," Tatom vaguely intimates that Ameritech did not uniformly interpret U.S. West as a competitor. (*See* Pl.'s Mem. Law Supp. Pl.'s Mot. Partial Summ. J., at 15.) To establish lack of uniform application,

a plaintiff must establish that an employee similarly-situated to him was treated differently under the plan. *McNab v. General Motors Corp.*, 987 F. Supp. 1115, 1121 (N.D. Ill. 1997), *aff'd*, 162 F.3d 959 (7th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). "Courts have been reluctant to hold that employees were similarly-situated unless the employees were in 'materially indistinguishable' circumstances." *Id.* (quoting *Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir. 1990)); *see Spencer v. Central States, Southeast & Southwest Areas Pension Fund*, 778 F. Supp. 985, 996-97 (N.D. Ill. 1991).

Tatom seems to argue in his brief in support of his motion for partial summary judgment that two employees who retired and went to work for U.S. West were treated differently when they received five years in which to exercise their vested stock options under the LTIP. (Pl.'s LR 56.1(a)(3) ¶ 10; Defs.' LR 56.1(a)(3) ¶¶ 175, 177-78.) However, it is undisputed that Tatom does not challenge the treatment of these two employees under the KMLIP. (Defs.' LR 56.1(a)(3) ¶ 175.) Even if Tatom had not conceded this point, the Court finds that these two employees were not similarly situated or in materially indistinguishable circumstances. First, as discussed above, neither of these employees were Corporate Resource executives, and, further, neither were even eligible for participation in the KMLIP. (Defs.' LR 56.1(a)(3) ¶¶ 177-78.) Second, Oliver was unaware that either of the employees were going to work for U.S. West at the time of their departure and did not learn of that fact until later. (*Id.* ¶¶ 181-82.)

Moreover, based on the undisputed facts before this Court, there was another employee that was similarly situated to Tatom. That employee was eligible for participation in the KMLIP and left to work for a competitor. (*Id.* ¶ 185.) Ameritech implemented an early roll-out of that employee's KMLIP. (*Id.* ¶ 186.) Because Tatom has failed to show that similarly situated employees were

20

treated differently under the KMLIP, the Court does not find that Ameritech's interpretation or application of the plan lacked uniformity. Accordingly, we do not find that Ameritech's decision to implement an early roll-out under the KMLIP was arbitrary and capricious. The Court denies Tatom's motion and grants defendants' motion for summary judgment as to the ERISA claims.

## Conclusion

For the forgoing reasons, the Court (1) grants in part and denies in part defendants' and plaintiffs' motions to strike [57-1, 76-1, 79-1]; (2) denies Tatom's motion for partial summary judgment [44-1]; and (3) grants defendants' motion for summary judgment [46-1]. This case is hereby terminated. All pending motions are dismissed as moot. This is a final and appealable order.

**SO ORDERED.**

ENTER:  *9/27/00*

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**

**United States Judge**

21